The People of Puerto Rico, Plaintiff and Appellee, *v.*
Francisco Sánchez, Defendant and Appellant.

No. 8096.   Argued November 26, 1940.—Decided December 10, 1940.

*Adolfo García Veve* for appellant.   *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Francisco Sánchez was charged by the District Attorney of San Juan with a subsequent offense of mayhem in that in March 1938, in Loíza, he did "unlawfully, wilfully, and with criminal intent" assault and batter Santiago Guzmán with a cutting instrument, inflicting upon him a severe wound which slit his right ear and permanently disfigured him, the defendant having been sentenced on September 20, 1933, for another offense of mayhem and having served his sentence.

The jury in rendering their verdict after having received the proper instructions, found the defendant guilty of aggravated assault and battery.   The defendant then asked for a new trial.   The court denied his petition and sentenced him to ten months' imprisonment in jail.   Thereupon he appealed, and after hearing the appeal, this Supreme Court by a *per curiam* decision of July 19, 1940, affirmed the judgment of the lower court.

The appellant insisted on his viewpoint and moved for a reconsideration, his motion being set for hearing on the 20th of last November. Both parties appeared at the hearing and submitted their respective arguments in favor and against the motion.

The appellant in his original brief assigned three errors in support of the reversal sought, to wit: That the information did not state a public offense "since it is not alleged therein that the defendant had acted 'maliciously,' a most essential element of the crime of mayhem"; that the court erred in denying the motion for a new trial; and that it also erred in allowing the district attorney to impeach the testimony of his own witness, Mateo Pérez, with that of Santiago Guzmán.

As to the last two errors, nothing need be added to what was said in the judgment of July 19, 1940, in order to deny the reconsideration sought. The emphasis in connection with the motion for reconsideration is placed upon the first error assigned.

We have already said that the defendant was charged with the crime of mayhem. It is argued that in order that an information for that crime may be valid it must contain the word "maliciously," and as the information herein does not contain it, the same could not serve as a basis for the prosecution.

In support of this contention, the appellant cites section 212 of the Penal Code, which defines the offense thus:

"Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear or lip, is guilty of mayhem."

He also cites the decisions of this court in *People* v. *Dumas,* 14 P.R.R. 384 and *People* v. *Llauger,* 14 P.R.R. 534, wherein the court, in so far as now pertinent, expressed itself as follows:

"The difference between the two crimes consists in that the killing in the crime of murder is effected with malice aforethought—that is to say, with malice and premeditation—and in the crime of manslaughter, without malice. The difference does not consist in premeditated intent in murder, and the lack of such intent in manslaughter. The terms malice and intent are entirely different. A crime may be committed without malice, but never without intent. If there was no intent, one of the integral and essential elements of every crime would be absent, because where there is no intent there can be no offense.

"     *     *     *     *     *     *     *

"Our Code does not define what is understood by intent, no doubt because in defining it it would have obscured the clear meaning of said word, both in the English and the Spanish language. But it does define the meaning of malice and maliciously, in subdivision four of section 559:

"  'The words malice and maliciously import the doing of a wrongful act, without just cause or excuse, a conscious violation of the law to the prejudice of another.'

"From this definition it cannot be deduced that the words malice and maliciously are synonymous with intent and intentionally, but entail the idea of a wilful act without just cause or excuse . . .

"The said Supreme Court of California establishes the doctrine we have expounded in the case of *The People* v. *Bartlett Freel*, 48 Cal., 437:

"  'Whether the homicide amounts to murder or manslaughter merely, does not depend upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and malicious intent which is an essential element in the crime of murder.' "  *The People* v. *Dumas*, 14 P.R.R. 384, 389–390.

"The difference between murder and manslaughter is well defined in the text books and the decisions of the court as well as in our statutes . . .

"     *     *     *     *     *     *     *

"Both crimes consist in the unlawful killing of a human being; murder is dóne 'with malice aforethought' and manslaughter 'without malice.' The intention to do the forbidden act must exist in both cases; for without the criminal intent there can be no crime (Penal Code, sec. 11.) It is the existence of malice, on the one hand, and the absence of it on the other, in the act of killing, which places the offense in the one category or the other." *People* v. *Llauger*, 14 P.R.R. 534, 541, 542.

The information in this case, indeed, does not contain the word "maliciously," which is used in the statute. It alleges that the act was done "unlawfully, wilfully, and with criminal intent," and the question under consideration is whether or not this court acted correctly in basing its judgment of July 19, 1940, as to that essential particular, on the following ground:

"WHEREAS the words 'with criminal intent' used in the information are substantially equivalent to the words 'with malice' or to the term 'maliciously' and, in any event, the defendant was not convicted of the crime of mayhem, charged against him in the information, but of the crime of aggravated assault and battery, defined by sections 1 and 6 of the Act of March 10, 1904, ' ... To define and punish ... aggravated assault and battery. . .' (Penal Code, 1937 ed., p. 154).

It would have been better practice on the part of the district attorney to use the words appearing in the statute. Those officers are supposed not only to have general knowledge of the law, which is implied in their status as lawyers, but also to be experts in the penal branch thereof, and this being so, why substitute for the term "maliciously" the words "wilfully and with criminal intent," thereby creating an undue complication? A lack of care at the beginning of a prosecution endangers subsequent rulings which may be perfectly just, and sometimes it causes the appellate courts, in upholding the justice of such rulings, to establish precedents which are vague, confusing, or conflicting.

The prosecuting attorney of this court in his brief maintains "that the phrase 'with criminal intent' is equivalent

to 'maliciously,' citing in support of his contention the case of *State* v. *Benson,* 5 P. (2d) 1045.

The opinion in said case, which was delivered by Mr. Justice Ford of the Supreme Court of Montana, begins thus:

"Defendant was charged with maliciously injuring personal property not his own, of the value of $20—a misdemeanor."

Further on it says:

"Every person who maliciously injures or destroys any real or personal property not his own, of the value of less than $50, is guilty of a misdemeanor. Section 11474, Rev. Codes 1921. 'The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' Section 10713, subd. 4, Id. In its broadest sense the word 'malicious' has been said to be synonymous 'with criminal intention and applies to the state of mind of the person who does a wrongful act intentionally or willfully, and without legal justification or excuse.' 16 C. J. 79. Whether an act is done maliciously presents a question which is often difficult of solution, for seldom is there direct evidence of malice. The existence or nonexistence of malice may be arrived at through inference to be drawn from all the facts and circumstances in the case. The state of the mind—the process of reasoning—is to any one, outside of the individual himself, manifest by the acts done or performed. In this case the jury was entitled to infer what defendant's intention was, by a study of all the facts and circumstances surrounding the acts done and to determine from them whether he acted with malice. After a careful study of the record we cannot say that the jury was not justified in the conclusion it reached."

As may be seen, in the information which served as a basis for the prosecution in the case from Montana, the district attorney followed the language of the statute and used the word "maliciously" employed in the statute to define the crime.

Resorting to the text of Corpus Juris, we find the following:

"The term 'malice', as used with respect to certain crimes, has a peculiar meaning, as in the case of arson, murder, malicious mis-

chief, etc. Even in this connection, however, the term is not used in its popular sense as denoting either general malignity or ill-will toward a particular individual. In its broadest legal sense the term is synonymous with criminal intention and applies to the state of mind of a person who does a wrongful act intentionally or willfully, and without legal justification or excuse. The term 'malice' is more general in its signification than 'willfulness,' but it implies willfulness." 16 C. J. 79.

Many cases are cited in the footnotes to the text. We have examined some of them, and the act is charged therein as having been perpetrated with malice or maliciously.

The same treatise—Corpus Juris—in fixing the nature and essential elements of the crime of mayhem, referring to the intention, malice, and premeditation in general, says:

"At common law the act, to constitute mayhem, must have been done with malice, and under the Coventry Act the deed must have been committed of malice aforethought and of a deliberate and premeditated design to do an injury of the sort described; but the malicious intention need not have been directed against any particular person, and although the statute provided against the particular acts 'with intention to maim or disfigure,' yet if the intent was of a higher nature, as to murder, and in the attempt the offender did not kill but only maimed, it was an offense within the act. Statutes have been enacted in this country aimed at acts committed unlawfully, maliciously, willfully, intentionally, on purpose, and of malice aforethought; and these elements must be present in order that the act charged may constitute the offense; but this is generally all that is necessary, and unless specifically provided for, neither the specific intent to commit the unlawful act charged, nor the specific intent to injure as to a particular part of the body, is necessary. Thus where the offense is simply the unlawful depriving of the member, etc., the specific intent to maim is not necessary, and a like rule applies under a statute providing for the punishment of maiming when inflicted under such circumstances as would have made the offense murder or manslaughter if death had ensued. But under the statutes in some jurisdictions, a specific intent to maim, disfigure, or disable is an essential element of the offense. Where malice is an element of the offense, it has been held that it may arise either previous to or at the time the act was done." 40 C. J. 3, 4.

We have adverted to our statute. It does not require a specific intent to maim (*People* v. *Pizarro,* 21 P.R.R. 17), but it does require malice.

It is not necessary that that malice should be of the character which carries with it hatred, vengeance, or ill will, but it must be the legal malice which our statute defines thus:

"The words 'malice' and 'maliciously' import the doing of a wrongful act, intentionally, without just cause or excuse, a conscious violation of the law to the prejudice of another." Sec. 559, number 4, Penal Code.

The question raised, then, is of doubtful solution, and as it is not indispensable to decide it finally now, in order not to complicate the jurisprudence we prefer to merely point it out for the present. Notwithstanding this, we think it opportune to state that under a strict interpretation of the law and the decisions, and giving emphasis to the purity of the proceedings, it would be necessary to hold that the crime is not properly charged where the word "maliciously" is not used, and the district attorneys should follow the strict interpretation which is the simplest one and which constitutes the shortest and safest course to be adopted.

We have said that it is not indispensable to decide that question at this time and indeed it is so because in any event our judgment of July 19th last is supported by the second of the grounds set forth in the paragraph (*por cuanto*) thereof already transcribed.

The appellant was charged with mayhem. The question which he now sets up was not raised by him in the lower court. He has raised it in this Supreme Court after the information produced no other effect than to charge him with the commission of the crime of assault and battery for which he was convicted, and after receiving the benefit of a trial by jury which otherwise would not have been available to him.

For the reasons stated the reconsideration sought must be denied.